378 A.2d 403

**COMMONWEALTH of Pennsylvania**

v.

**Gerald Joseph CUTE, Appellant.**

Superior Court of Pennsylvania.

Submitted March 21, 1977.

Decided Oct. 6, 1977.

Calvin S. Drayer, Jr., Assistant Public Defender, Norristown, for appellant.

James A. Cunningham and Eric J. Cox, Assistant District Attorneys, Norristown, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court should have allowed him to withdraw his guilty plea *nunc pro tunc* because of a defective guilty plea colloquy. Specifically, he complains that the plea was not knowing, intelligent and voluntary because the lower court did not explain the elements of the crime of robbery.[1] Because the court failed to explain

---

1. The Crimes Code, Act of Dec. 6, 1972; P.L. 1482, No. 334, § 1; 18 Pa.C.S. § 3701.

the elements of the offense charged,[2] we reverse the order of the lower court and remand for a new trial.

On February 6, 1976, appellant entered a plea of guilty to three indictments: No. 4985 October Term, 1975, charging robbery, theft,[3] terroristic threats,[4] and possession of instruments of crime;[5] No. 4641 October Term, 1975, charging burglary[6] and criminal attempt;[7] and No. 4665 October Term, 1975, charging robbery and theft. The instant appeal concerns only the judgment of sentence imposed upon No. 4985. Pursuant to a plea bargain, appellant, who was on parole in connection with two prior burglary convictions, agreed to waive formal revocation proceedings. He also agreed to plead guilty to all the foregoing charges in return for the assistant district attorney's recommendation of a concurrent sentence of 6 to 15 years' imprisonment on all felonies of the first degree and a consecutive sentence of 6 to 12 months' imprisonment on the parole revocations.

At the request of the court, appellant's counsel interrogated his client to establish that the plea was voluntary. Appellant's counsel inquired about the specific crimes to which appellant was pleading guilty:

"Q. And Mr. Cute, do you realize that you're charged with a number of indictments today. And I would like to go through them for a few minutes. The first group of indictments is indexed at 4641, October, 1975, charging you with the crime of burglary, and the crime of criminal attempt, on

2. Appellant also contends that the court failed to advise him that it was not bound by any sentencing recommendation and that the record fails to show if and when his plea was accepted. We find it unnecessary to decide these issues in view of our disposition of the first contention.

3. The Crimes Code, supra; 18 Pa.C.S. § 3921.

4. The Crimes Code, supra; 18 Pa.C.S. § 2706.

5. The Crimes Code, supra; 18 Pa.C.S. § 907.

6. The Crimes Code, supra; 18 Pa.C.S. § 3502.

7. The Crimes Code, supra; 18 Pa.C.S. § 905.

September 24, 1975. And that by pleading guilty you are admitting your involvement in these crimes.

"A. Yes.

"Q. This is the Springfield Township incident involving the burglaries of Dr. Shore's house and office?

"A. Yes.

"Q. And, Mr. Cute, I would also like to refer you to a number of bills of indictment, Nos. 4661, October Term, 1975. Once again this is on October 24, 1975, charging you with the crime of robbery and theft of movable property. And this involved an incident in Lower Merion Township. You're pleading guilty to this charge?

"A. Yes.

"Q. And you're admitting your involvement in this case.

"A. Yes.

"Q. And finally, Mr. Cute, No. 4985, October Term, 1975. There are a number of bills of indictment. And this is the Whitemarsh Township case charging you with robbery, theft of movable property, terroristic threats, and possession of an instrument of crime and you're admitting your involvement and guilt for these offenses; is that correct?

"A. Yes.

"Q. And, Mr. Cute, have I talked to you at length about the elements that create these offenses?

"A. Yes.

"Q. And have I explained to you the maximum penalties that could be imposed by this Court for those different penalties? [sic].

"A. Yes.

"Q. Now you have heard Mr. Miller, the Assistant District Attorney, talk at the beginning of this hearing. And he indicated that there would be an agreement in this case. And the agreement is that we would clean up everything that you have outstanding in Montgomery County. That is you would plead guilty to all of the indictments of the

outstanding charges and that Judge Cirillo in connection with this hearing would also handle your probation violation because I have advised you that upon a plea of guilty to any of these indictments you would be in violation of probation which Judge Smiley imposed; is that correct?

"A. Yes.

"Q. And you have agreed upon the sentence. And that sentence is six to fifteen years and six months in addition to that.

"A. Yes.

"Q. And do you understand that?

"A. Yes."

Appellant's counsel briefly explained the trial and appellate rights which appellant would waive by a plea of guilty. Then, the assistant district attorney explained the potential sentences for the various offenses charged. He briefly explained the elements of each offense, including the crime of robbery:

"Q. You're aware that the crime of robbery is defined as taking of property of another by use of force or threat of force and you're aware of that?

"A. Yes."

The assistant district attorney examined appellant further regarding his understanding of the trial rights he would waive by entering a guilty plea. The court then ordered that appellant step down from the witness stand. The assistant district attorney then summarized the crimes charged in each indictment. There is nothing in the record, however, to indicate that appellant acknowledged that he was guilty of the specific acts recited by the assistant district attorney because the colloquy had ended. The only indication in the record that the court accepted the plea of guilty is contained on the sentencing sheet attached to the transcript of the plea colloquy. At the conclusion of the hearing, the court continued appellant's parole on the two

burglary charges.[8] The court sentenced appellant to 6 to 15 years' imprisonment on the robbery charged in indictment No. 4985 and to a consecutive sentence of 6 to 12 months' imprisonment on the robbery charged in indictment No. 4665. It suspended sentence on the remaining charges upon condition that the appellant pay costs of prosecution imposed in connection with indictment No. 4985.

Appellant did not petition to withdraw his guilty plea. See Rule 319(b)(3); 19 P.S. Appendix; *Commonwealth v. McNeill*, 453 Pa. 102, 106, 305 A.2d 51 (1973); *Commonwealth v. McCusker*, 245 Pa.Super. 402, 369 A.2d 465 (1976). Appellant filed a direct appeal on February 26, 1976, and this Court granted his petition for appointment of counsel and for leave to proceed *in forma pauperis.* The Court of Common Pleas of Montgomery County appointed the Public Defender to represent appellant. On August 12, 1976, counsel for appellant petitioned this Court to discontinue the appeal; we granted the petition that same day.

Appellant filed the instant Post Conviction Hearing Act[9] petition in July, 1976, alleging that his guilty plea was unlawfully induced and that his right of appeal had been obstructed.[10] The court appointed a Montgomery County assistant public defender to represent appellant at the P.C.H.A. hearing, which was held on August 17, 1976. P.C.H.A. counsel argued that the plea of guilty was invalid because the court failed to explain the elements of the charged offenses and failed to enter on the record its acceptance of the guilty plea. Appellant's P.C.H.A. counsel attempted to argue that these issues had not been waived by failing to petition to withdraw or to pursue a direct appeal, but the court truncated the discussion because it granted appellant leave to proceed with a *nunc pro tunc* petition to

8. Appellant was serving a parole term of 10 years.

9. Act of Jan. 25, 1966, P.L. (1965) 1580, § 1 et seq.; 19 P.S. § 1180–1 et seq.

10. Appellant's *pro se* petition indicated that he believed his appeal had not been filed because it was too late.

withdraw.[11] At the conclusion of the hearing, the court entered an order denying the petition for P.C.H.A. relief and denying the *nunc pro tunc* petition to withdraw. This appeal followed.

■ Rule 319(a), Pa.R.Crim.P., provides that a court may not accept a plea of guilty unless it determines after inquiry of the defendant that the plea is voluntarily and understandingly made. See *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Commonwealth v. Holmes*, 468 Pa. 409, 364 A.2d 259 (1976); *Commonwealth v. Dilbeck*, 466 Pa. 543, 353 A.2d 824 (1976); *Commonwealth v. Sutton*, 465 Pa. 335, 350 A.2d 793 (1976); *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974); *Commonwealth v. Brown*, 238 Pa.Super. 199, 357 A.2d 559 (1976). In *Ingram*, the Supreme Court held that a defendant is entitled to an on-the-record explanation of the elements of the charges to which he is pleading guilty before that plea can be considered voluntary. The court must give the accused "real notice" of the charges pending against him prior to accepting the plea. *Commonwealth v. Holmes*, supra, 468 Pa. at 413, 364 A.2d at 261. See *Comment* to Rule 319, Pa.R. Crim.P.; 19 P.S. Appendix; *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 2257–59, 49 L.Ed.2d 108 (1976); Gafni and Shellenberger, *Guilty Plea Colloquy in Pennsylvania*, 48 Pa.Bar Assoc.Q. 259, 269–71 (1977).

11. The Commonwealth argues that appellant waived his right to challenge collaterally a defect in the colloquy which could have been raised on direct appeal. See *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975). Clearly, appellate counsel could have raised trial counsel's ineffectiveness for failing to petition to withdraw. However, the lower court obviated the need for testimony on the issue of counsel's ineffectiveness by granting appellant the right to proceed immediately with a petition to withdraw *nunc pro tunc*. Once a court which is hearing a P.C.H.A. petition has determined that appellate rights have been obstructed by trial counsel's failure to take proper steps to perfect an appeal, it has the power to grant the petitioner the right to file the appropriate motions or petitions *nunc pro tunc*. *Commonwealth v. Morales*, 458 Pa. 18, 326 A.2d 331 (1974); *Commonwealth v. Grillo*, 208 Pa.Super. 444, 222 A.2d 427 (1966). The instant appeal is taken from the order of the lower court denying the *nunc pro tunc* petition to withdraw and from the order denying P.C.H.A. relief.

 It is well-settled that it is insufficient merely to advise the accused of the names of the crimes or to read the statutory definition. The elements of the offenses charged must be explained in understandable terms. *Commonwealth v. Ingram,* supra, 455 Pa. at 203–4, 316 A.2d at 80. If the elements of the offense include legal terminology or phrases which are specifically defined in the Crimes Code, the definitions and meanings of these terms must be explained in clear, simple language. Furthermore, when criminal liability is predicated upon the commission of, the intent to commit or an attempt to commit any constituent offense, the definition of the applicable constituent offense must be similarly explained. *Commonwealth v. Holmes,* supra; *Commonwealth v. Dilbeck,* supra; *Commonwealth v. Sutton,* supra; *Commonwealth v. Brown,* supra.

Appellant complains that the plea of guilty to indictment No. 4985, charging robbery, was not knowingly entered because the court failed to elucidate the elements of the offense. The crime of robbery is defined by the Code as follows:

"(1) A person is guilty of robbery if, in the course of committing a theft, he:

"(i) inflicts serious bodily injury upon another;

"(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury; or

"(iii) commits or threatens immediately to commit any felony of the first or second degree.

"(2) An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission."

The crime of robbery contains terms defined elsewhere in the Code: the term "theft" is defined in § 3931; the term "serious bodily injury" is defined in § 2301; and the term "intentionally" is defined in § 302(b).

 In the instant case, the assistant district attorney instructed appellant that the crime of robbery was defined as "the taking of property of another person by use of force

or threat of force." However valid such an explanation may have been under the common law, it was insufficient to give appellant real notice of the charge under § 3701 of the Crimes Code. The court failed to explain each of the elements of the offense in understandable terms. The court did not explain the constituent crime of theft nor did it discuss the terms "serious bodily injury" or "intentionally". While we do not prescribe any particular verbal formula, it is clear from a review of the record that the colloquy in the instant case failed to demonstrate any exploration of the applicable concepts of criminal liability.

The lack of an on-the-record showing that, prior to the acceptance of the guilty plea,[12] appellant had an understanding of the nature of the offense with which he was charged, negates the validity of the plea. *Commonwealth v. Dilbeck*, supra.

Judgment of sentence vacated and case is remanded for trial.

CERCONE and PRICE, JJ., concur in the result.

JACOBS and VAN der VOORT, JJ., dissent.

12. The Commonwealth argues that its rendition of the facts summarized from the indictments after the colloquy had ended was sufficient to apprise appellant of the elements of the offense. This is incorrect. First, the Commonwealth's presentation of the facts presented in the indictment must occur during, not after the colloquy with appellant. Second, a complete colloquy must contain both an explanation of the elements of the offense and a discussion of the factual basis for the plea. *Commonwealth v. Brown*, supra.